(12 Misc. Rep. 291.)

WINCH v. FARMERS' LOAN & TRUST CO. et al.

(Common Pleas of New York City and County, Special Term. April, 1895.)

1. CONTRACTS—CONSTRUCTION.

A contract signed by defendants recited that they proposed "the formation of a gas company in Brooklyn, or the operation in Brooklyn of a company already formed," and that they agreed, in consideration of plaintiff's giving them certain information, to give him "five bonds of a first mortgage of said gas works or said company," and that it was understood that such information was of a character to affect the validity or operation of a proposed agreement between defendants and the owners of a franchise, "commonly known as the Equity Charter or the

Equity Company of Williamsburgh, Brooklyn." *Held*, that the contract contemplated bonds of the company to be formed or operated in Brooklyn, and not bonds of the "Equity Company" mentioned in the last clause.

2. DEMURRER—PRESUMPTIONS AS TO PRODUCTION OF EVIDENCE.

Where a complaint relies distinctly on a writing pleaded therein, and gives it a meaning not warranted by its terms, it cannot be presumed on demurrer that other written evidence will be produced on the trial to give it such meaning. Iron Works v. Pemberton (Com. Pl. N. Y.) 27 N. Y. Supp. 931, distinguished.

Action by Charles F. Winch against the Farmers' Loan & Trust Company, as executor of Benjamin F. Sherman, deceased, and Henry E. Fanshawe. Defendants demur to the complaint. Sustained. The complaint is as follows:

The plaintiff, for an amended complaint, complaining of the defendants, alleges: First. That heretofore, at the city of New York, and on or about the 4th day of March, 1890, Benjamin F. Sherman and Henry E. Fanshawe, for a valuable consideration, entered into an agreement, in writing, with the plaintiff, a copy of which is hereto annexed, and made a part of this complaint, wherein and whereby, in consideration that the plaintiff would impart to them certain valuable information requested by them, they agreed to pay to the plaintiff five bonds of a certain gas company therein referred to, meaning the Equity Gaslight Company of the Eastern District of the City of Brooklyn, at the par value of five thousand ($5,000) dollars, as soon as issued or printed by the said company, and secured by a first mortgage on the gas works of said company. Second. That thereupon the plaintiff then and there imparted to the said Sherman and the said Fanshawe the said information requested by them, and he otherwise duly performed all of the conditions of said agreement on his part. Third. That thereafter, and on or about the 29th day of October, 1890, the said Benjamin F. Sherman died, leaving a last will and testament duly proved on or about the 11th day of December, 1890, before the surrogate of the city and county of New York, and recorded in Liber 445 of Wills, at page 178, etc., wherein the defendant the Farmers' Loan and Trust Company, a domestic corporation, duly chartered under the laws of the state of New York for such purpose, was named as executor of the said last will and testament; and the said defendant the Farmers' Loan and Trust Company thereupon entered upon the performance of its duties as executor as aforesaid. Fourth. That thereafter, and on or about the 1st day of July, 1891, the said Equity Gaslight Company of the Eastern District of the City of Brooklyn printed and issued its bonds, secured by a first mortgage on its gas works. That the defendants, and each of them, have failed to deliver to the plaintiff the five bonds as agreed, or any bonds whatever, after due demand made on the defendants, and each of them, to the plaintiff's charge in the sum of five thousand (5,000) dollars; and he is informed and believes that the defendant Fanshawe is insolvent, and a judgment against him alone could not be satisfied. Wherefore the plaintiff demands judgment against the defendants, and each of them, for the sum of five thousand (5,000) dollars, with interest thereon from the 1st day of July, 1891, besides the costs of this action.

Dated New York, February 23d, 1895.

Edward Swann, Plaintiff's Attorney, 71 Broadway, New York City.

New York, March 4th, 1890.

Whereas, we, the undersigned, for ourselves and others in interest, propose the formation of a gas company in Brooklyn, or for operation in Brooklyn or the operation in Brooklyn of a company already formed; and whereas Charles F. Winch, of New York, is in possession of certain information which, if imparted to us, is likely to be of value to us: We hereby agree, in consideration of said Winch having given us such information, to give said Winch five (5) bonds of a first mortgage of said gas works or said company, making a par value of five thousand dollars in the best of any securities issued and payable as soon as issued or printed. It is understood that said information is of a character to directly affect the validity or operation of a certain contract or

agreement now made or in progress of making between us and the owners or supposed owners of a charter or franchise, commonly known as the Equity Charter or the Equity Company of Williamsburgh, Brooklyn.

                                                        B. F. Sherman.
                                                        Hy. E. Fanshawe.

Witness: E. M. Carroll.

Edward Swann, for plaintiff.
Sullivan & Cromwell, for defendant Fanshawe.

BOOKSTAVER, J.   The complaint relies, distinctively and unmistakably, upon the written contract exhibited upon its face, and attempts to make out a cause of action by placing a certain interpretation upon that contract, which interpretation is not, in my opinion, warranted by the language used.   The defendants' agreement was "to give said Winch five bonds of a first mortgage of said gas works or said company."   The words "said gas works or said company" clearly refer to a gas company "to be formed in Brooklyn or for operation in Brooklyn," or to "a company already formed" to be operated in Brooklyn.   The last clause of the contract, which mentions the "Equity Gas Company of Williamsburgh, Brooklyn," is quite evidently for the purpose of characterizing the information to be given, and not to specify the company meant.   If the intention had been to agree to give the plaintiff bonds of the Equity Company, it would have been easy to say so in so many words; but, instead of such direct and definite expression, the parties ex industria employ language which is indefinite and descriptive, and naturally so, because it is plain that their plans were at the time uncertain and contingent.   It should be observed that the language is very guarded, in that the defendants did not agree or undertake, but only proposed, to form or operate a gas company.   The plaintiff's compensation was to be in bonds of such company, unascertained at the time, when they should at last have formed or operated it.   He should therefore allege that the defendants formed or operated a company of the kind described.   I do not think that the complaint could be saved by parol proof upon the trial that the parties meant the Equity Company instead of one unascertained at the time.   Such proof would be inadmissible as varying or contradicting the writing.

Neither is there any room for the presumption, in support of the complaint, that other written evidence will be produced upon the trial.   The pleader relies too distinctly and unmistakably upon the particular writing pleaded.   In this respect the case differs from Iron Works v. Pemberton (Com. Pl. N. Y.) 27 N. Y. Supp. 931. There the allegation was that the consideration for the guaranty sued upon was the plaintiff's agreement to renew certain promissory notes, and it was held that notwithstanding the fact that certain writings, which were pleaded as guaranties, failed to state any consideration, it would be presumed that other writings would be forthcoming upon the trial, and that those set forth should be disregarded as being a pleading of evidence, and therefore surplusage. Here the allegation is not that there was an agreement to give the

plaintiff bonds of the Equity Company, but that a certain writing set forth had that meaning.

Upon the appeal in this case the attention of the general term was concentrated upon the refusal to allow any amendement to the complaint, which it held to be error (32 N. Y. Supp. 244); and, as leave was given to amend, it was not deemed necessary to discuss the question now raised. The demurrer should therefore be sustained, with leave to the plaintiff to amend, if so advised, upon the payment of costs of demurrer only.